**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

---

|                                         |     |                                   |
| --------------------------------------- | --- | --------------------------------- |
|                                         | :   |                                   |
| RANDALL BATINKOFF                        | :   |                                   |
| and TOP SECRET,                          | :   |                                   |
|                                         | :   |                                   |
| Plaintiffs,                             | :   |                                   |
|                                         | :   | Case No. 3:18-cv-16388-BRM-LHG    |
| v.                                      | :   |                                   |
|                                         | :   |                                   |
|                                         | :   |                                   |
| CHURCH & DWIGHT CO., INC.               | :   | **OPINION**                       |
| AND MARK H. KRESS,                      | :   |                                   |
|                                         | :   |                                   |
| Defendants.                             | :   |                                   |

---

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendant Mark H. Kress ("Kress" or "Defendant") Motion to Dismiss Plaintiffs Randall Batinkoff ("Batinkoff") and Top Secret's ("Top Secret") (collectively, "Plaintiffs") Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted. (ECF No. 40.) Plaintiffs oppose the Motion. (ECF No. 49.) Kress has filed a Reply. (ECF No. 52.) Also before the Court is Plaintiffs' Motion to Dismiss co-Defendant Church & Dwight Co. Inc.'s ("Church & Dwight" or "Defendant") Counterclaims I and II for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 49.) Church & Dwight opposes that Motion. (ECF No. 54.) Plaintiffs have filed a Reply. (ECF No. 56.) Having reviewed the filings submitted in connection with the motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons below and for

good cause shown, Kress's Motion to Dismiss is **GRANTED in part** and **DENIED in part**, and

Plaintiffs' Motion to Dismiss Church & Dwight's Counterclaims I and II is **DENIED**.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A.  Factual Background

At issue in this litigation are patents that make possible spray-on hair. Randall Batinkoff is

a California actor who is the named inventor of U.S. Patent No. 7,841,494 ("the '494 patent"),

which was issued November 30, 2010. (Second Am. Compl. (ECF No. 34) ¶¶ 1, 3, 7, Ex. A (ECF

No. 34-1) at 30 (Batinkoff Feb. 13, 2018 email).) The '494 patent, titled "Pump Dispenser," is a

one-handed pump cap for dispensing hair fibers without clogging. (*Id.* ¶¶ 7, 9, Ex. 1 at 30.)

Top Secret is a California corporation with a principal place of business at 1413 Ashland

Ave, Santa Monica, Calif., 90405. (*Id.* ¶ 2.) Batinkoff is president of Top Secret. (*Id.* ¶ 3.) Batinkoff

is the sole assignee of the '494 patent. (*Id.* ¶ 10.) Plaintiffs do not state when Top Secret was

incorporated or began operations. Plaintiffs say Top Secret had an "implied right" to the invention

until March 11, 2019, when Top Secret entered an "exclusive license agreement" for the patent.

(*Id.* ¶ 4.) Under that agreement, Batinkoff retains rights to the '494 patent. (*Id.*)

Kress is a California resident who holds U.S. Patent No. 8,172,115 ("the '115 patent"),

called "Hair Building Solids Dispenser for One Handed Operation" and issued May 8, 2012. (*Id.*

¶¶ 6, 67.) Kress founded and was chief executive of a Delaware corporation called Spencer Forrest,

Inc. ("Spencer Forrest"), with a principal place of business at 1122 Tower Road, Beverly Hills,

---

[1] For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the
Amended Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See
Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Furthermore, the Court also
considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington
Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*,
82 F.3d 1194, 1220 (1st Cir. 1996)).

Calif., 90210. (*Id.* ¶¶ 6, 16, 37.) Spencer Forest sold a spray-on hair product line called Toppik™ that includes a cap that "allows for a more precise application" of hair fibers. (*Id.* ¶¶ 9, 17.)

Plaintiffs argue the '115 patent is an attempt to copy Batinkoff's invention and is likely invalid over the '494 patent. (*Id.* ¶ 26). Plaintiffs further contend Kress was the public face of Toppik™, appearing in commercials on behalf of the product, as well as directing and managing all of Spencer Forrest's business activities, "including infringing activities alleged in this Complaint until [Spencer Forrest's] sale to Church & Dwight on January 4, 2016." (*Id.* ¶¶ 19, 23.) Spencer Forrest sold Toppik™ in New Jersey, to Bed Bath & Beyond in Union, New Jersey, and to Harmon Stores in Manalapan, New Jersey and in Bricktown, New Jersey. (*Id.* ¶¶ 20-22.) "Kress, on at least one occasion, sold the accused infringing product to a resident of New Jersey through [Amazon.com]." (*Id.* ¶ 18.)

Plaintiffs allege Church & Dwight, and Spencer Forrest and Kress before January 4, 2016, infringed the '494 patent by selling Toppik™ products using the "Toppik Hair Fibers Spray Applicator (also marketed as Toppik™ Hair Spray Applicator)." (*Id.* ¶ 56.) Plaintiffs further allege Kress failed to pay either Plaintiff any royalty for sales of infringing products since at least 2012, while Church & Dwight failed to pay any royalty for the sales of its infringing products since January 4, 2016. (*Id.* ¶¶ 57-58.) As a result, Plaintiffs allege damages of lost profits because of the infringing sales by "Kress's Spencer Forrest," and Church & Dwight. (*Id.* ¶¶ 59-60.)

### B. Procedural History

Batinkoff filed a Complaint on November 21, 2018, alleging one count of direct infringement against Church & Dwight and one count of direct infringement against Kress pursuant to the "Patent Laws of the United States, 35 US.C. § 101 <u>et. seq</u>. [sic]" (ECF No. 1 ¶¶ 4, 14-26, 37-59.) Church & Dwight filed a Motion to Dismiss that Complaint pursuant to Federal

Rule of Civil Procedure 12(b)(6). (ECF No. 8.) Batinkoff filed an Amended Complaint on February 4, 2019. (ECF No. 9.) The Amended Complaint added three claims of infringement against Church & Dwight, while grounding three of the now four counts against Church & Dwight in provisions of 35 U.S.C. § 271(a), (b), and (c). (*Id.* ¶¶ 14-57.) The Amended Complaint similarly added three claims of infringement against Kress, grounding three of the now four counts against Kress in the same provisions of Title 35. (*Id.* ¶¶ 58-98.) The next day, the Court terminated Church & Dwight's Motion to Dismiss the Complaint but granted Defendant permission to file a Motion to Dismiss the Amended Complaint by February 25, 2019. (ECF No. 11.) Church & Dwight filed an Answer to the Amended Complaint on February 19, 2019. (ECF No. 18.) Batinkoff filed a letter application incorrectly as a motion, seeking leave to amend the Amended Complaint on March 15, 2019. (ECF No. 21.) After hearing from the parties on the application and by Letter Order dated April 23, 2019, the Court set a deadline of April 26 for the filing of a Second Amended Complaint. (ECF No. 32.)

Batinkoff sought a two-week extension (ECF No. 36), and a Second Amended Complaint was filed on May 10, 2019 (ECF No. 34). The Second Amended Complaint added Top Secret as a Plaintiff. (*Id.*) Church & Dwight filed an Answer to the Second Amended Complaint on May 23, 2019, denying any infringement. (ECF No. 39.) The Answer included Counterclaims I and II, seeking declaratory judgments that all claims of the '494 patent are invalid, void, or unenforceable, and that Church & Dwight did not infringe the '494 patent. (*Id.* ¶¶ 6-15.)

In lieu of filing an Answer, Kress filed this Motion to Dismiss on May 24, 2019. (ECF No. 40.) Plaintiffs filed opposition to the Motion on June 10, 2019. (ECF No. 49.) On June 13, 2019, Plaintiffs filed their Motion to Dismiss Church & Dwight's Counterclaims I and II. (ECF No. 49.) Kress filed a Reply to his Motion to Dismiss on June 24, 2019. (ECF No. 52.) Church & Dwight

filed its opposition to Plaintiffs' Motion to Dismiss its Counterclaims on July 1, 2019. (ECF No. 54.) Plaintiffs filed their Reply on July 8, 2019. (ECF No. 56.)

## II.  LEGAL STANDARDS

### A.  Rule 12(b)(2) Standard

A plaintiff bears "the burden of demonstrating facts that establish[] personal jurisdiction." *Fatouros v. Lambrakis*, 627 F. App'x 84, 86-87 (3d Cir. 2015) (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)). A court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker*, 292 F.3d at 368 (quoting *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)). Pursuant to Federal Rule of Civil Procedure 4(e), a district court may exercise personal jurisdiction according to the law of the state where it sits. "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 95 (3d Cir. 2004) (citing N.J. Ct. R. 4:4-4(c)). In other words, this Court's jurisdiction is "constrained, under New Jersey's long-arm rule, only by the 'traditional notions of fair play and substantial justice' inhering in the Due Process Clause of the Constitution." *Carteret Sav. Bank*, 954 F.2d at 145 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Thus, parties who have constitutionally sufficient 'minimum contacts' with New Jersey are subject to suit there." *Miller Yacht Sales*, 384 F.3d at 96 (citing *Carteret Sav. Bank*, 954 F.2d at 149).

The Supreme Court has defined two categories of personal jurisdiction: specific jurisdiction and general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014) (citing *Int'l Shoe Co.*, 326 U.S. at 317); *see also Metcalfe*, 566 F.3d at 334 ("Minimum contacts can be analyzed in the context of general jurisdiction or specific jurisdiction."). Specific jurisdiction exists

when the suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 127, 134 S. Ct. 746, 754 (2014) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, n.8, 104 S. Ct. 1868, 80 L.Ed.2d 404 (1984). General jurisdiction requires continuous and systematic contacts, and exists in "situations where a foreign corporation's 'continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'" *Id.* (quoting *Int'l Shoe Co.*, 326 U.S. at 318).

"Under traditional jurisdictional analysis, the exercise of specific personal jurisdiction requires that the 'plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003) (citing *Pinker*, 292 F.3d at 368.) The defendant must have "'purposefully directed' his activities at residents of the forum and the litigation [must] result[] from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *Metcalfe*, 566 F.3d at 334. Further, the Due Process Clause of the Fifth Amendment requires that a "defendant has constitutionally sufficient 'minimum contacts' with the forum" and that "the court's jurisdiction comports with traditional notions of fair play and substantial justice." *Pinker*, 292 F.3d at 369 (citing *Burger King Corp.*, 471 U.S. at 474 and *Int'l Shoe Co.*, 326 U.S. at 316).

While the Supreme Court has not ruled out the possibility an individual could be subject to general jurisdiction because of "continuous and systematic contacts" with the forum, the Court has applied general jurisdiction only to corporate defendants. *Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; *for a corporation*, it is an equivalent place, *one in which the corporation is fairly regarded as at home*.") (emphasis added). "It may be that whatever

special rule exists permitting continuous and systematic contacts . . . to support jurisdiction with respect to matters unrelated to activity in the forum applies only to corporations." *Burnham v. Superior Court of Cal.*, 495 U.S. 604, 610 n.1 (1990).

## B. Rule 12(b)(6) Standard

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires that the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be

pleaded; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "'document *integral to or explicitly relied upon* in the complaint.'" *Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220).

### III. DECISION

#### A. Kress's Motion to Dismiss

Kress contends the Court should grant his Motion to Dismiss because the Court lacks personal jurisdiction over him and because Plaintiffs have not stated a claim against him for which relief can be granted. (*See* ECF No. 41.) "Because this action arises under the Patent Laws of the

United States, the Court must apply the precedents of the United States Court of Appeals for the Federal Circuit, which has jurisdiction over any appeal of this judgment." *Warner Chilcott Laboratories Ireland Limited v. Impax Laboratories, Inc.*, No. 2:08–cv–06304, 2012 WL 12980525, at *3 (D.N.J. May 1, 2012) (citing 28 U.S.C. § 1295(a)). The Court first examines the question of whether it has personal jurisdiction over Kress before considering the merits of Plaintiffs' claims against him. *Wyrough & Loser, Inc. v. Pelmor Laboratories, Inc.*, 376 F.2d 543, 547 (3d Cir. 1967) (citing *Arrowsmith v. United Press International*, 320 F.2d 219, 221, 6 A.L.R.2d 1072 (3d Cir. 1963)).

### i. Personal Jurisdiction[2]

As a general proposition, Plaintiffs "bear[] the burden of establishing sufficient facts to show that jurisdiction exists," *International Playthings LLC v. Toy Teck Ltd., LLC*, No. 2:11–6832, 2013 WL 8184357, at *2 (D.N.J. July 23, 2013) (citing *Marten v. Godwin,* 499 F.3d 290, 295–96 (3d Cir. 2001), however, because the Court has not held an evidentiary hearing, Plaintiffs bear only the burden of proving a *prima facie* case of personal jurisdiction over the moving Defendant. *See Metcalfe*, 566 F.3d at 330.

Kress contests whether a New Jersey district court has personal jurisdiction over him individually, as a California resident. (ECF No. 41 at 1.) To establish a *prima facie* case of general jurisdiction, Plaintiffs must show Kress's contacts with New Jersey are "continuous and systematic." *Megaparts v. HighCom Sec., Inc.*, 2010 WL 2652494, at *3 (D.N.J. 2010) (citing

---

[2] Plaintiffs contend this Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a). (ECF No. 34 ¶ 11.) Neither Defendant contests this, and it is well established District Courts have jurisdiction over "any Act of Congress relating to patents, plant variety protection, copyrights and trademarks." *Rutgers, The State University v. BioArray Solutions, Ltd.*, 2017 WL 1395486, at *4 (D.N.J. 2017) (citing 28 U.S.C. § 1338(a).) Thus, this Court has subject-matter jurisdiction over this litigation.

*Helicopteros,* 466 U.S. at 414).) *Phila. Macaroni Co. v. Italpasta Ltd.* stands for the proposition general jurisdiction is lacking if a defendant conducts only minimal business activity in the relevant forum and where such activity does not qualify as the defendant's "bread and butter." 2010 U.S. Dist. LEXIS 39030, at *14–15 (E.D. Pa. 2010) (citing *Gehling v. St. George's Sch. of Med., Ltd.,* 773 F.2d 539, 542–43 (3d Cir. 1985) (concluding medical school lacked continuous and substantial business relationship with Pennsylvania despite directing advertisements toward Pennsylvania, having 6% of its students from Pennsylvania, and conducting a joint international program with a Pennsylvania college)).

Kress claims Plaintiffs cannot establish general jurisdiction over him because he has not maintained continuous and substantial affiliations with New Jersey. (*Id.* at 5 (citing *Patent Incentives, Inc. v. Seiko Epson Corp.*, 1988 WL 92460, *4 (D.N.J. Sept 6, 1988), *aff'd*, 878 F.2d 1446 (Fed. Cir. 1989)).)

In the Second Amended Complaint, Plaintiffs contend Kress is subject to general jurisdiction,[3] but in opposing Kress's Motion to Dismiss Plaintiffs argue only for specific jurisdiction over Kress. Because Plaintiffs do not argue for general jurisdiction in their opposition to this Motion and the only argument made in the Second Amended Complaint is comprised of one conclusionary sentence with no further evidentiary support, the Court declines to conclude Kress is subject to general jurisdiction of this Court. Therefore, the Court turns to Kress's arguments that this Court does not have specific jurisdiction over him.

Plaintiffs advance three grounds for this Court's personal jurisdiction over Kress: Kress's actions as an individual touching New Jersey; Kress's actions as the alter ego of Spencer Forrest;

---

[3] The Second Amended Complaint reads: "Kress is subject to general jurisdiction because the cause of action for patent infringement does not 'arise out of or is unrelated to the defendant's contacts with the forum.'" (ECF No. 34 ¶ 24.)

and Kress's actions as an executive of Spencer Forrest who is personally liable for intentional torts like infringement that he personally directed. To establish a *prima facie* case of specific jurisdiction, Plaintiffs must show (1) Kress "purposefully directed [his] activities at [New Jersey]," (2) Plaintiffs' claim "arise[s] out of or relate to at least one of those activities," and (3) "the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice." *See Sandy Lane Hotel*, 496 F.3d at 317 (internal quotations and citations omitted). "[P]laintiff may not rely on bare pleadings alone" in such a showing, "but must come forward with affidavits and other competent evidence establishing with reasonable particularity the nature and extent of [D]efendant's contacts with [New Jersey]." *See Sadek v. Horovitz*, No. 10-2187, 2013 WL 12149254, at *6 (D.N.J. Mar. 28, 2013) (citing *Metcalfe*, 566 F.3d at 330).

"Whether a plaintiff's claims 'arise out of or relate to' the defendant's contacts with the forum state depends, in part, on the type of claim brought." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F. 3d 124, 130 (3d Cir. 2020) (citing *O'Connor*, 496 F. 3d at 317 (quoting *Helicopteros*, 466 U.S. at 414)). Tort claims "require[] a closer and more direct causal connection than" but-for causation. *Danziger*, 948 F. 3d at 130 (citing *O'Connor*, 496 F. 3d at 320–23). The defendant must have benefited enough from the forum state's laws to make the burden of facing litigation there proportional to those benefits. *Danziger*, 948 F. 3d at 130 (citing *O'Connor,* 496 F. 3d at 323 (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F. 3d 797, 802 (9th Cir. 2004)). Intentional torts require more: "The defendant [must have] expressly aimed [its] tortious conduct at the forum" to make the forum "the focal point of the tortious activity." *Danziger*, 948 F. 3d at 130 (citing *IMO Industries, Inc. v. Kiekert AG*, 155 F. 3d 254, 265–66 (3d Cir. 1998). And "the plaintiff [must have] felt the brunt of the harm in the forum." *Danziger*, 948 F. 3d at 130 (citing *IMO Industries*, 155 F. 3d at 265–66).

The Court will examine each of Plaintiffs' alleged grounds for jurisdiction in turn.

### a. Jurisdiction Over Kress as an Individual

Kress contends Plaintiffs cannot establish specific jurisdiction over him as an individual because that requires showing the claims in the Second Amended Complaint are related to or arise out of contacts Kress had as an individual with New Jersey. (*Id.* at 5 (citing *Dollar Savings Bank v. First Security Bank of Utah*, 746 F.2d 208, 211 (3d Cir. 1984) (footnote omitted)).) However, Kress argues, he personally has not engaged in any activities that could confer specific jurisdiction over him in New Jersey because his "sporadic contacts with New Jersey are unrelated to plaintiffs' infringement claim." (*Id.* at 5 (citing *Dollar Savings Bank*, 746 F.2d at 211).)

Plaintiffs counter that specific jurisdiction exists over Kress personally because Kress purposely directed activities at New Jersey, including:

- Personally prosecuting the '115 patent on which he is a named inventor via the New Jersey law firm of New Jersey law firm of Lerner, David, Littenberg, Krumholtz, & Mentlik LLP (*id.* ¶ 26);

- Personally assigning Power of Attorney over to that Westfield, New Jersey law firm (*id.*);

- Personally negotiating and executing the $175 million sale of Spencer Forrest to Church & Dwight, of Ewing, New Jersey (*id.* ¶ 30);

- Personally assigning the Toppik™ trademark to Church & Dwight in New Jersey (*id.* ¶ 29); and

- Personally assigning the '115 patent to Church & Dwight in New Jersey (*id.* ¶ 28).

Kress counters that actions such as prosecuting the patent and assigning power of attorney through a New Jersey law firm, or even negotiating the sale of Spencer Forrest or assigning the trademark and patent to Church & Dwight cannot serve as the basis of specific jurisdiction because those actions are unrelated to any infringement alleged in the Second Amended Complaint.

The Court agrees and concludes that, even if these transactions were enough to constitute sufficient activities directed at New Jersey, Plaintiffs' claims do not arise from these activities. Infringement involves the "making, using, offering to sell or selling" of any patented invention. 35 U.S.C. § 271(a). Inducing infringement pursuant to § 271(b) requires the predicate act of actual infringement, meaning § 271(a)'s making, using, offering to sell or the sale of any patented invention. It is self-evident that prosecuting a patent and assigning power of attorney are not acts that make, use, offer to sell or sell a patented invention. *Irvin v. Buick Motor Co.*, 88 F. 2d 947, 951 (8th Cir. 1937), *cert. denied*, 301 U.S. 702, 57 S. Ct. 932, 81 L.Ed. 1357, *rehearing denied*, 302 U.S. 773, 58 S. Ct. 6, 82 L.Ed. 599 ("Infringement ordinarily is present when one person makes, uses, or vends a patented device or article, not when the user, maker, or vendor makes an effort to obtain a patent, for a similar, or even an identical device or article.") Plaintiffs have provided no case law establishing the proposition that the prosecution of a patent or the engagement of a law firm in and of themselves constitute the making, using, offering to sell or the selling of any patented invention. Therefore, the Court concludes there is no specific jurisdiction over Kress under this Plaintiffs' theory.

### b. Jurisdiction Over Kress via Alter Ego Liability

Plaintiffs contend specific jurisdiction exists because Spencer Forrest was the alter ego of Kress and that corporation's purposefully directed New Jersey activities included:

> • Selling the allegedly infringing Toppik™ on two websites that "were highly interactive and contained information about the infringing product, advertisements about the infringing product and allowed customers to create online accounts, make payments by credit card over the internet and telephone and leave comments, all of which were accessible to residents of New Jersey" (*see* ECF No. 48 at 5; *see also* ECF No. 34 ¶ 17);

> • Selling the allegedly infringing Toppik™ products to a Bed Bath & Beyond Store in Union, New Jersey (ECF No. 34 ¶ 20); and

• Selling the allegedly infringing Toppik™ products to Harmon Stores in Bricktown, New Jersey and in Manalapan, New Jersey (*id.* ¶¶ 21, 22).

Plaintiffs then allege Spencer Forrest was the alter ego of Kress because:

• He founded and was chief executive of Spencer Forrest (*id.* ¶ 16);

• He owned Spencer Forrest (*id.* ¶ 23);[4]

• He directed and managed all Spencer Forrest's business activities, including the infringing activities alleged in the Second Amended Complaint (*id.* ¶ 23);

• He negotiated the sale of the allegedly infringing Toppik™ products to a Bed Bath & Beyond Store in Union, New Jersey (*id.* ¶ 20);

• He negotiated the sale of the allegedly infringing Toppik™ products to Harmon Stores in Bricktown, New Jersey and in Manalapan, New Jersey (*id.* ¶¶ 21, 22); and

• He was the public face of Spencer Forrest, personally appearing in Spencer Forrest's commercials and describing himself there as the "CEO/Creator of Toppik" (*id.* ¶ 19).[5]

Plaintiffs contend that, because Spencer Forrest was the alter ego of Kress, actions that would otherwise be attributed to the corporation should be attributed to Kress, meaning that the

_____

[4] Plaintiffs allege Kress owned Spencer Forrest (ECF No. 34 ¶ 39) but describe him elsewhere as "*a* former owner of Spencer Forrest" (*id.* ¶ 6) (emphasis added), though later alleging Kress "solely collected approximately $175 million dollars [sic] of the sales proceeds" from the sale of Spencer Forrest. (*Id.* ¶ 23.) In opposing the Motion, Plaintiffs describe Kress as the Founder and sole owner, and ascribe to him the additional corporate title of President of Spencer Forrest. (ECF No. 48 at 9.) In a September 24, 2019 Letter to the Court, Kress says discovery shows Kress alternated the titles of President, Chief Executive and Chief Financial Officer with his ex-spouse during the period of alleged infringing activities. (ECF No. 63 at 1.)

[5] At least one ad can be viewed at https://www.youtube.com/watch?v=YdkBKWsrfB0 (ECF No. 34 ¶ 19 (last checked on March 30, 2020).) In the ad, Kress claims he invented Toppik™ to solve his own thinning-hair problem.

undisputed specific jurisdiction this Court has over Spencer Forrest as a result of that corporation's New Jersey-directed activities also should attach to Kress. (ECF No. 48 at 15-16.)

Kress does not contest the argument that this Court has specific jurisdiction over Spencer Forrest. Instead, Kress contests Plaintiff's alter ego theory that this Court's specific jurisdiction over Spencer Forrest also extends to Kress himself. Thus, the Court first must examine the case for specific jurisdiction over Spencer Forrest.

Plaintiffs claim Spencer Forrest's sales to a Bed Bath & Beyond store and two Harmon Stores locations in New Jersey constitute Spencer Forrest's "purposely directed activities" at New Jersey. This Court has recognized that in patent cases "where a defendant infringer is shown to have sold the allegedly infringing product in the forum state, the forum may exercise [specific] jurisdiction over the defendant." *VP Intellectual Properties, LLC v. IMTEC Corp.*, 1999 WL 1125204, at *5 (D.N.J. 1999) (quoting *Osteotech, Inc. v. Gensci Regeneration Sciences, Inc.,* 6 F. Supp. 2d 349, 354 (D.N.J. 1998)) (citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558 (Fed. Cir. 1994)).) Regardless of the quantity of products sold or the shipping method used, the sale of patented products to buyers in the forum state creates specific jurisdiction over an out-of-state seller. *See generally North Am. Philips Corp. v. American Vending Sales, Inc.,* 35 F.3d 1576, 1579–80 (Fed. Cir. 1994) (finding that goods shipped to sellers f.o.b. were sold in the purchaser's state); *Beverly Hills Fan,* 21 F.3d at 1570 (finding jurisdiction in patent case where sales were made to customers in the forum state). Spencer Forrest sold its allegedly infringing products to at least three New Jersey purchasers. Therefore, the Court finds it can exercise specific jurisdiction over Spencer Forrest. Having concluded specific jurisdiction exists over Spencer Forrest, the Court now must determine whether that jurisdiction extends to Kress as the alter ego of the corporation.

Plaintiffs argue specific jurisdiction exists over Kress because Spencer Forrest really was the alter ego of Kress and that Spencer Forrest operated on behalf of Kress. Kress counters that Plaintiffs have it backward: Spencer Forrest did not operate on behalf of Kress, but rather as chief executive Kress acted on behalf of Spencer Forrest. (ECF No. 41 at 7.) Kress further contends Plaintiffs make "no allegations that Spencer [Forrest] was the alter ego or agent of Mr. Kress." (*Id.* at 2.) The Court agrees.

The New Jersey Supreme Court recognized in *Ventron* a corporation is an entity separate and distinct from its owners, and thus owners as a general proposition are shielded from liability for the actions of the corporation. 468 A.2d at 164, 94 N.J. at 500–01. Similarly, in New Jersey it is well established that a corporate officer does not incur personal liability for the torts of a corporation "merely by reason of his official character." *Charles Bloom & Co. v. Echo Jewelers*, 652 A.2d 1238, 1243, 279 N.J. Super. 372, 381 (N.J. Super. App. Div. 1995). However, courts may "pierce" this liability shield "upon a finding that the [owner] so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent," *Ventron*, 468 A.2d at 164. In the Third Circuit, courts consider "six informative but not necessarily dispositive factors" when deciding whether there is a unity of interest between the owner and the corporation:

> 1) gross undercapitalization;
> 2) a failure to observe corporate formalities, the nonpayment of dividends;
> 3) the insolvency of the debtor corporation at the time;
> 4) siphoning of corporate funds by the dominant stockholder;
> 5) nonfunctioning of other officers or directors, absence of corporate records; and
> 6) the fact that the corporation is merely a façade for the operations of the dominant stockholder or stockholders.

*Pactiv Corp. v. Perk-Up, Inc.*, 2009 WL 2568105, at *5 (D.N.J. 2009) (citing *Craig v. Lake Asbestos of Quebec, Ltd.,* 843 F.2d 145, 150 (3d Cir. 1988) (citations omitted)). Plaintiffs have not

provided any evidence or made any allegations justifying veil piercing beyond stating that Kress owned Spencer Forrest, was a high-ranking corporate officer, and, for sales purposes, was the face of the company. None of these allegations touch on the six *Craig* factors. Therefore, the Court does not find specific jurisdiction exists over Kress on the theory that because Spencer Forrest personally directed activities toward New Jersey through sales of the allegedly infringing Toppik™ product to three New Jersey stores so too did Kress as the alter ego of Spencer Forrest.

### c. Jurisdiction Over Kress as a Spencer Forrest Executive

Finally, Plaintiffs argue this Court has specific jurisdiction over Kress because he personally directed activities toward New Jersey as an executive of Spencer Forrest by selling the allegedly infringing product via Amazon.com. (ECF No. 34 ¶ 18.) Plaintiffs further argue Kress directed activities toward New Jersey by personally negotiating on behalf of Spencer Forrest the sale of allegedly infringing Toppik™ product to Bed Bath & Beyond stores and to Harmon Stores in New Jersey. The Court considers each of these allegations in turn.

Though Plaintiffs make the Amazon allegation only "[o]n information and belief" (*id.*), it is well established that when considering a Motion to Dismiss, the Court accepts the factual allegations in the pleading as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d at 228. Furthermore, "where a defendant infringer is shown to have sold the allegedly infringing product in the forum state, the forum may exercise [specific] personal jurisdiction over the defendant." *VP Intellectual Properties*, 1999 WL 1125204, at *5 (quoting *Osteotech,* 6 F. Supp. 2d at 354 (citing *Beverly Hills Fan,* 21 F.3d 1558)). However, Plaintiffs "may not rely on bare pleadings alone" to establish the nature of Kress's contacts with New Jersey, "but must come forward with affidavits and other competent evidence establishing with reasonable particularity the nature and extent" of those contacts. *See Sadek*, No. 10-2187,

2013 WL 12149254, at *6 (citing *Metcalfe*, 566 F.3d at 330).

While Plaintiffs must present only a *prima facie* case for jurisdiction, meaning the establishment of a legally required rebuttable presumption,[6] a singular, threadbare allegation in the Second Amended Complaint based on Plaintiffs' "information and belief" does not meet the burden required of Plaintiffs by *Metcalfe*. Furthermore, Kress counters that Plaintiffs "omit mention of Spencer" in this activity, but "other allegations in the Second Amended Complaint confirm that this activity was done by Spencer, which marketed Toppik Spray Products on the amazon.com website." (ECF No. 41 at 7 n.2 (citing ECF No. 34 ¶¶ 112, 123).) In other words, Kress does rebut Plaintiffs' contention any Amazon.com sale in New Jersey should be attributed to Kress because he allegedly made this sale himself. Accordingly, the Court concludes it has no specific jurisdiction over Kress on the basis of the alleged Amazon.com sale.

As to actions he took on behalf of Spencer Forrest, Kress argues that Plaintiffs improperly attribute the actions of the Delaware corporation he once owned, Spencer Forrest, with his actions as an individual. (*Id.* at 6-8.) Kress argues it is well established in New Jersey that "a corporation is a separate entity from its shareholders" and "a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise." (*Id.* at 5 (citing *State Dep't of Environ. Prot. v. Ventron Corp.*, 468 A.2d 150, 164 (N.J. 1983)).) Essentially, Kress claims many of the contacts with New Jersey alleged by Plaintiffs were made by him in his role as an officer/agent of the corporation and that he is shielded from liability for any alleged infringement by the corporate form of Spencer Forrest, and thus specific jurisdiction does not exist as to his person. (ECF No. 41 at 7 (citing *Dollar Savings Bank*, 746 F.2d at 211; *Patent Incentives, Inc.*, 1988 WL 92460, at *5).)

---

[6] Black's Law Dict., 10th Ed. at 1382.

Plaintiffs counter that Kress's reliance upon the corporate shield is misplaced. Specifically, Plaintiffs point to *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.* as establishing the proposition that patent infringement is a tort and "officers of a corporation are personally liable for tortious conduct of the corporation if they personally took part in the commission of the tort or specifically directed other officers, agents, or employees of the corporation to commit the tortious act." (ECF No. 48 at 12-13 (quoting *Orthokinetics*, 806 F.2d 1565, 1579 (Fed. Cir. 1986)).) Specifically, Plaintiffs argue "*Orthokinetics* continues to be the governing law on the issue of personal liability of corporate officers in the context of direct and inducement of infringement under 35 U.S.C. § 271(a) and (b)," and that § 271(a)

> has generally been interpreted to allow a finding of infringement against any entity be it an individual, corporation or otherwise. Even with respect to officers of corporations, it is hornbook law that there is no need to pierce the corporate veil in order to find personal liability. "The cases are legion in which courts have recognized and imposed personal liability on corporate officers for participating in, inducing, and approving acts of patent infringement."

 (*Id.* at 13 (quoting *Symbol Tech.*, 771 F. Supp. 1390, 1402-03 (D.N.J. 1991) (citing *Orthokinetics*, 806 F.2d at 1579)).) Essentially, Plaintiffs argue the sole owner and executive of a corporation cannot escape personal jurisdiction when the Court has personal jurisdiction over the corporation that is a mere alter ego of its owner. (*Id.* at 15-17.)

Kress responds that Plaintiffs misread the case law, arguing "Plaintiffs' authorities, in fact, hold that finding an individual liable for direct infringement by a corporation requires piercing the corporate veil." (Kress's Reply (ECF No. 52) at 1 (citing *Orthokinetics*, 806 F.2d at 1579).)[7]

---

[7] Under the veil-piercing doctrine, courts cast aside the liability shield in order to hold a corporation's owners or executive personally liable for the corporation's actions. In *State, Dept. of Environmental Protection v. Ventron Corp.*, the New Jersey Supreme Court held courts may pierce the veil to find individual liability of a corporate parent/owner when that parent/owner so

Specifically, Kress cites to *Orthokinetics*' language that "whether corporate officers are personally liable for the direct infringement of the corporation under § 271(a) requires invocation of those general principles relating to piercing the corporate veil." (*Id.* at 5 (quoting *Orthokinetics*, 806 F.2d at 1579).)

The Court begins by examining the holding of *Orthokinetics* and then applying principles to be discerned there and in its progeny to Kress's Motion.

*Orthokinetics* expressly states "whether corporate officers are personally liable for the direct infringement of the corporation under § 271(a) requires invocation of those general principles relating to piercing the corporate veil." *Orthokinetics*, 806 F.2d at 1579. The very next sentence, however, declares: "Infringement is a tort, and officers of a corporation are personally liable for tortious conduct of the corporation if they personally took part in the commission of the tort or specifically directed other officers, agents, or employees of the corporation to commit the tortious act." *Id.* For these propositions, the Federal Circuit cites, *inter alia*, two Circuit Court opinions: *White v. Mar-Bel, Inc.*, 509 F.2d 287, 185 USPQ 129 (5th Cir. 1975), and *Rex Chainbelt, Inc. v. General Kinematics Corp.*, 363 F.2d 336, 150 USPQ 319 (7th Cir. 1966).

In *White*, the Fifth Circuit did not discuss piercing the corporate veil and did not find the corporation to be the mere alter ego of the officer. However, in upholding a jury finding of personal liability of the defendant corporation's president, the Fifth Circuit reasoned that this corporate officer also "was the incorporator, president, majority stockholder, and moving force which resulted in the manufacture of the accused device" and personally "participated in the development and promotion of the sale of his machine which was marketed soon after [plaintiff's] machine was

---

dominates the corporation that the corporation is a mere alter ego of the parent/owner. 468 A.2d 150, 164, 94 N.J. 473, 500–01 (N.J. 1983).

exhibited in 1968." *White*, 509 F.2d at 292. These facts could support the conclusion either that liability attached to the executive because the corporation was the alter ego of an executive that dominated the corporation as its creator, president and biggest stockholder, or that the executive was liable through his own actions in participating in a tort, there the development and sale of the infringing product. In other words, this decision provides little insight into the *Orthokinetics* Court's reasoning. That said, this Court notes that the defendant executive in *White* was found guilty of inducing infringement pursuant to § 271(b). (*Id.*)

In *Rex Chainbelt*, the Seventh Circuit upheld a trial court's finding of individual liability for a corporate officer for patent infringement, explicitly stating its finding was grounded in "support in the record" that the corporate defendant was the executive's alter ego. *Rex Chainbelt,* 363 F.2d at 348. In other words, though unstated, it is clear the Court's reasoning and vocabulary was informed by the doctrine of piercing the corporate veil. *See Ventron Corp.*, 468 A.2d at 164, 94 N.J. at 500–01; *see also* Note, "Piercing the Corporate Veil: The Alter Ego Doctrine Under Federal Common Law," 95 Harv. L. Rev. 853, 854 (1982). This executive also was found guilty of inducing infringement. *Rex Chainbelt*, 363 F.2d at 337.

The *Symbol Technologies* Court recognized the confusion caused by *Orthokinetics'* invocation of the general principles of veil-piercing so closely preceding the Court's statement that "officers of a corporation are personally liable for tortious conduct of the corporation if they personally took part in the commission of the tort or specifically directed other officers, agents, or employees of the corporation to commit the tortious act." *Symbol Tech.*, 771 F. Supp. at 1402-03 (citing *Orthokinetics*, 806 F.2d at 1579.) Indeed, the Court observed in a later case, *Manville Sales Corp. v. Paramount Systems, Inc.,* that the Federal Circuit "combined the dicta of *Orthokinetics* and the language in [*A. Stucki Co. v. Worthington Indus., Inc.*], seemingly

creating a new standard for § 271(a) which necessitates piercing the corporate veil in order to find an officer of a corporation personally liable for patent infringement." *Symbol Technologies*, 771 F. Supp. at 1403 (citing *Manville,* 917 F.2d 544, 552–53 (Fed. Cir. 1990) and *Worthington,* 849 F.2d 593, 596 (Fed. Cir. 1988).)[8] Still, the *Manville* Court noted that the defendant executive was found liable for direct infringement in part because he "was one of three people responsible for the design and production of the infringing device, and he was found to be in a position to benefit directly from the patent infringement." *Symbol Technologies*, 771 F. Supp. at 1403 (citing *Orthokinetics,* 806 F.2d at 1579).

In *Manville* the Federal Circuit explained the circumstances under which corporate executives generally enjoy the liability shield inherent in the corporate form. There, the Court stated that for allegations of direct infringement under 35 U.S.C. § 271(a), individual liability depends on finding "evidence to justify piercing the corporate veil." 917 F.2d at 552 (citing *A. Stucki Co. v. Worthington Indus., Inc.,* 849 F.2d 593, 596, 7 USPQ2d 1066, 1068 (Fed. Cir. 1988).) By contrast, for allegations of inducing infringement pursuant to 35 U.S.C. § 271(b), individual liability may be found without piercing the veil when it is established corporate officers "actively assist[ed] with their corporation's infringement." *Manville*, 917 F.2d at 553 (citing *Orthokinetics,* 806 F.2d at 1578–79). For such a finding, the Court stated, "The alleged infringer must be shown, however, to have *knowingly* induced infringement." *Manville*, 917 F. 2d at 553 (citing *Water Technologies Corp. v. Calco, Ltd.,* 850 F.2d 660, 668, 7 USPQ2d 1097, 1103 (Fed. Cir. 1988)).

Plaintiffs argue "Kress was a corporate officer who actively aided and abetted his

---

[8] In *Worthington*, the Court ultimately held the parent corporation was not liable for the infringing actions of a subsidiary because it determined the corporations were distinct entities. *Worthington,* 849 F.2d at 596–97.

corporation Spencer Forrest's infringement activities." (ECF No. 48 at 9.)

Here, Plaintiffs must show, pursuant to *Akro Corp. v. Luker*, that Kress purposefully directed activities at New Jersey, that the underlying infringement arose out of those activities, and that an assertion of specific jurisdiction is constitutionally reasonable. *SDS USA, Inc. v. Ken Specialties, Inc.*, 2002 WL 31055997, at *4 (D.N.J. 2002) (citing *Akro,* 45 F.3d 1541, 1545–46 (Fed. Cir. 1995).

For the first prong of the *Akro* test, the following are Plaintiffs' allegations about Kress's purposefully directed activities at New Jersey that the Court could construe as arising from the underlying allegedly infringing conduct:

> • "[W]hen [Kress] negotiated the sale of the accused infringing product with Bed Bath & Beyond" of Union, New Jersey (ECF No. 34 ¶ 27);
>
> • When he "personally appeared in Spencer Forrest's commercials describing himself as 'Mark Kress, CEO/Creator of Toppik,' and promoting the accused product" (*id.* ¶ 19);
>
> • When at Kress's "direction" Spencer Forrest "shipped the accused infringing product to Harmon Stores" in Manalapan and Bricktown, New Jersey. (*id.* ¶¶ 21, 22); and
>
> • When Kress "owned and/or maintained" the www.toppik.com website prior to the January 4, 2016 sale of Spencer Forrest to Church & Dwight (*id.* ¶ 95).

Kress argues these acts alleged by Plaintiffs are distanced from Kress individually—via such language as Spencer Forrest acted "under the direction" of Kress (ECF No. 34 ¶ 40) or Spencer Forrest acted "on behalf of" Kress (*id.* ¶ 17)—and so, without more, are not sufficient for this Court to recognize specific jurisdiction over Kress. But the Second Amended Complaint's language that "he negotiated the sale" to Bed Bath & Beyond can be read only as alleging that Kress is "personally liable for tortious conduct" of Spencer Forrest because he "personally took

part in the commission of the tort." *Orthokinetics*, 806 F.2d at 1579. "[W]here a defendant infringer is shown to have sold the allegedly infringing product in the forum state, the forum may exercise [specific] personal jurisdiction over the defendant." *VP Intellectual Properties*, 1999 WL 1125204, at *5 (quoting *Osteotech,* 6 F. Supp. 2d at 354 (citing *Beverly Hills Fan,* 21 F.3d 1558). This is so regardless of the quantity of products sold. *See North Am. Philips,* 35 F.3d at 1579–80.

However, Plaintiffs "may not rely on bare pleadings alone" to establish the nature of Kress's contacts with New Jersey, "but must come forward with affidavits and other competent evidence establishing with reasonable particularity the nature and extent" of those contacts. *See Sadek*, No. 10-2187, 2013 WL 12149254, at *6 (citing *Metcalfe*, 566 F.3d at 330). To support their contention that this Court has specific jurisdiction over Kress personally, Plaintiffs are required to come forward with "other competent evidence establishing with reasonable particularity the nature and extent" of Kress's contacts with New Jersey. Here, Plaintiffs mostly rely only on the Second Amended Complaint to allege this Court has specific jurisdiction over Kress because he negotiated the sale of the allegedly infringing product to Bed Bath & Beyond in New Jersey and directed the sale of the product to Harmon Stores in New Jersey. However, Plaintiffs do not rely only on the Second Amended Complaint for allegations that Kress personally appeared in advertisements describing him as the creator of Toppik™, and at the least maintaining, if not owning, the Toppik.com website prior to Spencer Forrest's 2016 sale to Church & Dwight. (ECF No. 34 ¶¶ 19, 21, 22, 27, 95.) Rather, Plaintiffs provide a link to a video available on Youtube.com at which the commercials featuring Kress appear.

The Court concludes that for the purposes of this Motion, and with all reasonable inferences favoring Plaintiffs as required for a Motion to Dismiss, Plaintiffs have alleged circumstantial evidence to support a determination that via at least three acts Kress purposefully directed his

activities at New Jersey. The Court thus concludes the first prong of the *Akro* test has been met.

The Court further concludes the second prong has been satisfied because Plaintiffs' § 271(b) claim of influencing infringement by Kress arises out of, or relates to, Kress's purposefully directed activities at New Jersey, namely the Bed Bath & Beyond sale. Though the Third Circuit has not adopted a bright-line test for the relatedness requirement, the Circuit has held that satisfying it requires a closer causal connection than but-for causation. *HS Real Co., LLC v. Sher*, 526 F. App'x 203, 206 (3d Cir. 2013). Here, Plaintiffs claim Batinkoff's '494 patent was infringed by sales of the Toppik™ applicator. It is clear, then, that negotiating the sale of Toppik™ kits including the Toppik™ Applicator and marketing the Toppik™ product line are causally connected to sales of the allegedly infringing product.

The third prong asks "whether assertion of personal jurisdiction is constitutionally reasonable." *SDS USA*, 2002 WL 31055997, at *4 (citing *Akro,* 45 F.3d at 1545–46). Plaintiffs make no argument about the reasonableness of jurisdiction. However, because Plaintiffs have made a *prima facie* case of minimum contacts as determined in considering the first *Akro* prong, the burden is on Defendant to "present a *compelling* case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 324 (emphasis added) (quoting *Burger King Corp.*, 471 U.S. at 477). Factors a court should consider when balancing jurisdictional reasonableness include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate [and the international] judicial system's interest in obtaining the most efficient resolution of controversies." *Id.* This Court finds Kress has not presented a compelling case. *See id.* Indeed, Kress makes no argument as to jurisdictional reasonableness.

New Jersey "has a 'manifest interest in providing effective means of redress' when a

foreign corporation reaches into the state and solicits its citizens." *Sandy Lane Hotel*, 496 F.3d at 325 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957).) As explained above, Kress reached into New Jersey to negotiate and direct sales into the state, as well as appeared in advertisements supporting allegedly infringing sales. The Supreme Court has stated, "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *See Sandy Lane Hotel*, 496 F.3d at 325 (quoting *Asahi Metal*, 480 U.S. at 114). This case is not one where a non-forum resident is being "unilaterally drawn into the forum by another." *See Grand Entm't*, 988 F.2d at 485 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)). Kress, through his affirmative actions, brought himself into contact with New Jersey. *See id.* Kress had clear notice, then, that he could be subject to suit in New Jersey for claims arising from his actions with residents of this forum. *See World-Wide Volkswagen Corp.*, 444 U.S. at 297. Because Kress has not presented a compelling case of unreasonableness, the Court holds jurisdiction in New Jersey "comport[s] with fair play and substantial justice." *See Burger King Corp.*, 471 U.S. at 476.

Plaintiffs have established all three prongs of the specific personal jurisdiction test. *See Akro,* 45 F.3d 1541, 1545–46; *see also Sandy Lane Hotel*, 496 F.3d at 317. Accordingly, the Court finds it has specific jurisdiction over Kress for this litigation. Therefore, Kress's Motion to Dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) is **DENIED**.

### ii. Failure to State a Claim

Having determined this Court has personal jurisdiction over Kress, the Court now must examine the merits of Plaintiffs' claims against Kress pursuant to Rule 12(b)(6).

In Count V, Plaintiffs allege Kress directly infringed the '494 patent pursuant to § 271(a).

"Although the *Iqbal/Twombly* standard applies to 'all civil actions,' its applicability to patent cases has been interpreted differently among federal courts." *Robern, Inc. v. Glasscrafters, Inc.*, 206 F. Supp. 3d 1005, 1008 (D.N.J. 2016). This discrepancy finds its genesis in then-Rule 84 of the Federal Rules of Civil Procedure, which provided guidance on how to sufficiently plead a claim. *Id.* Rule 84 stated: "The Forms in the Appendix . . . illustrate the simplicity and brevity that these rules contemplate." Fed. R. Civ. P. 84. Form 18 in the Appendix of Forms, titled "Complaint for Patent Infringement," provided an example for pleading a claim of direct patent infringement. But, Rule 84 was abrogated in December 2015. *Robern, Inc.*, 206 F. Supp. 3d at 1008. As such, Form 18 was likewise abrogated. *Id.*

Before Rule 84's abrogation, courts took different views as to whether *Iqbal/Twombly*'s higher pleading standard or Form 18's standard applied. *Id.* Form 18 required a plaintiff to merely plead the following: (1) an allegation of jurisdiction; (2) a statement that Plaintiff owns the patent; (3) a statement that defendant has been infringing the patent "by making, selling, and using [the device] embodying the patent"; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages. *K–Tech Telecomm., Inc. v. Time Warner Cable, Inc.*, 714 F. 3d 1277, 1283 (Fed. Cir. 2013) (quoting *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007).) In *In re Bill of Lading Transmission & Processing Sys. Patent Litigation.*, 681 F.3d 1323, 1334 (Fed. Cir. 2012), the Federal Circuit made clear the "Forms are controlling only for causes of action for which there are sample pleadings." 681 F.3d at 1336. There, the court found a claim for direct infringement was properly pled if consistent with Form 18. *Id.* at 1334. However, if the allegation was one of indirect infringement, the Federal Circuit looked to the *Iqbal/Twombly* standard. *Id.* at 1337–39.

Unlike the Federal Circuit, "[o]ther courts . . . held that because the *Twombly/Iqbal*

pleading standard applies to all civil cases, a patent infringement complaint must do more than simply assert the bare elements of a claim, and that a Form 18-style complaint will not suffice, in the aftermath of *Twombly* and *Iqbal*." *Robern, Inc.*, 206 F. Supp. 3d at 1009-10 (quoting *Gradient Enters., Inc. v. Skype Techs. S.A.*, 848 F. Supp. 2d 404, 407 (W.D.N.Y. 2012)) (citing *Medsquire LLC v. Spring Med. Sys. Inc.*, No. 11–4504, 2011 WL 4101093, at *2 (C.D. Cal. Aug. 31, 2011) (requiring *Iqbal/Twombly* plausibility pleading in cases of direct patent infringement); *Bender v. LG Elecs. U.S.A., Inc.*, No. 09–02114, 2010 WL 889541, at *6 (N.D. Cal. Mar. 11, 2010) (same)).

This discrepancy remains even after the abrogation of Rule 84. Some courts in this district have "determined that the *Iqbal/Twombly* plausibility standard applies," *Robern, Inc.*, 206 F. Supp. 3d at 1010, while others continue to use Form 18. *Endo Pharm., Inc. v. Impax Labs., Inc.*, No. 16-2526, 2016 WL 6246773, at *5 (D.N.J. Oct. 25, 2016). Irrespective of what standard should or does apply, the Court finds Plaintiffs' Second Amended Complaint satisfies the higher standard of *Iqbal/Twombly*.

Under *Iqbal/Twombly*, Plaintiffs are required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable of the misconduct alleged." *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the ground upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

Direct infringement of a patent occurs when a party, without authority, "makes, uses, offers to sell, or sells any patented invention, within the United States." 35 U.S.C. § 271(a). "Corporate officers who actively assist with their corporation's infringement may be personally liable for inducing infringement '*regardless* of whether the circumstances are such that a court should

disregard the corporate entity and pierce the corporate veil.'" *SDS USA*, 2002 WL 31055997, at

*6 (citing *Manville,* 917 F.2d at 553 (citing *Orthokinetics,* 806 F.2d at 1578–79).)

"A patentee may prove direct infringement under § 271(a) either by (1) demonstrating specific instances of direct infringement; or (2) showing that an accused device necessarily infringes on the patent." *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007). To state a claim for direct infringement, a plaintiff must list the defendant's products that allegedly infringe, describe the alleged infringement, and relate "factual assertions to the pertinent claims" in its patent. *Robern, Inc.*, 206 F. Supp. 3d at 1011. The complaint must allege that the accused product infringes on "each and every element of at least one claim" of the plaintiff's patents "either literally or equivalently." *Disc Disease Sols. Inc.*, 888 F.3d at 1260.

Here, Plaintiffs allege Defendants' "Toppik Spray Applicator infringes claims 1-11 of the '494 patent either literally or under the doctrine of equivalents." (ECF No. 34 ¶ 65.)[9] Plaintiffs' Second Amended Complaint includes a table in which the language of each claim from the '494 patent appear in one box while descriptions of how the "Toppik hair fiber applicator" infringes that claim appear in an adjoining box, often with illustrations. For example, Claim 1 of the '494 patent states:

> A pump cap for dispensing a cosmetic media from a receptacle, the receptacle having a base and an outer upright peripheral wall extending from the base to define a receptacle chamber for the cosmetic media, the upright peripheral wall terminating in an open end . . . .

(*Id.* at ¶ 68.)

In the adjoining box, Plaintiffs allege:

---

[9] Plaintiffs directly allege this infringement against Kress in Count V through "realleg[ing] and incorporat[ing] herein by reference each and every allegation in paragraphs 1-92 of this Complaint." (ECF No. 34 ¶ 93.)

> The Toppik Spray Applicator contains "a pump cap" which is designed for dispensing a cosmetic media (hair fibers) from a receptacle having a base and upright peripheral wall, the wall and base defining a receptacle chamber with an open top end. Attachment of the Accused Product to a receptacle chamber (i.e., container) is described as follows: "Twist and pull off the built-in sifter on Toppik Hair Building Fibers and screw the Spray Applicator onto the bottle. Fits 12g and 27.5g bottles."

(*Id.*)

The Court concludes the Second Amended Complaint provides sufficient notice to Spencer Forrest and Church & Dwight of the specific ways in which Plaintiffs allege infringement of the '494 patent. However, Count V alleges direct infringement by Kress himself. Among acts contained in the Second Amended Complaint the Court construes as alleging direct infringement by Kress include:

> • "[W]hen [Kress] negotiated the sale of the accused infringing product with Bed Bath & Beyond" of Union, New Jersey (ECF No. 34 ¶ 27);
>
> • When he "personally appeared in Spencer Forrest's commercials describing himself as 'Mark Kress, CEO/Creator of Toppik,' and promoting the accused product" (*id.* ¶ 19);
>
> • When at Kress's "direction" Spencer Forrest "shipped the accused infringing product to Harmon Stores" in Manalapan and Bricktown, New Jersey (*id.* ¶¶ 21, 22); and
>
> • When Kress "owned and/or maintained" the www.toppik.com website prior to the January 4, 2016 sale of Spencer Forrest to Church & Dwight (*id.* ¶ 95).

However, the discussion contained under the heading of Count V allege only that Spencer Forrest acted on behalf of Kress. (ECF No. 34 ¶ 106) ("The products marketed by Spencer Forrest on behalf of Mr. Kress that included the Toppik Spray Applicator infringed claim 7 either literally or under the doctrine of equivalents, because they included containers with hair fibers to which the Accused Product was attached prior to use.") In other words, Plaintiffs' allegations expressly listed

under Count V suppose the alter-ego liability discussed above against Kress. However, Plaintiff has not alleged facts this Court could construe as addressing the *Craig* factors to decide whether there is a unity of interest between Kress and Spencer Forrest. Plaintiffs have not alleged Spencer Forrest was grossly undercapitalized, or failed to observe corporate formalities, or that corporate funds were siphoned off by Kress, or that the corporation was merely a façade for Kress's operations. In short, Plaintiffs have not provided any evidence or made any allegations justifying veil piercing beyond stating that Kress owned Spencer Forrest, was a high-ranking corporate officer, and, for sales purposes, was the face of the company. None of these allegations touch on the six *Craig* factors.

The analysis changes, though, for the Second Amended Complaint's language that "he negotiated the sale" to Bed Bath & Beyond can be read only as alleging Kress's personal involvement in this sale. (ECF No. 34 ¶ 27.) Pursuant to § 271(a), infringement occurs when any person or entity "makes, uses, offers to sell, or sells any patented invention, within the United States." The Second Amended Complaint's language that Kress "negotiated the sale" to Bed Bath & Beyond alleges that Kress is "personally took part in the commission of the tort" and thus is "personally liable for tortious conduct" of Spencer Forrest. *Orthokinetics*, 806 F.2d at 1579. As discussed, "where a defendant infringer is shown to have sold the allegedly infringing product in the forum state, the forum may exercise [specific] personal jurisdiction over the defendant." *VP Intellectual Properties*, 1999 WL 1125204, at *5 (quoting *Osteotech,* 6 F. Supp. 2d at 354 (citing *Beverly Hills Fan,* 21 F.3d 1558). This is so regardless of the quantity of products sold. *See North Am. Philips,* 35 F.3d at 1579–80.

When combined with allegations setting out how the Toppik Spray Applicator infringes the '494 patent, the Court finds Plaintiffs' Second amended Complaint pleads sufficient factual

content to allow the Court to draw the reasonable inference Kress is liable for the § 271(a) misconduct alleged. *Disc Disease Sols. Inc.*, 888 F.3d at 1260 (citation omitted). Accordingly, Kress's Motion to Dismiss Count V's direct infringement claim is **DENIED**.

The Court now examines Kress's Motion to Dismiss Count VI alleging Kress induced infringement of the '494 patent. Pursuant to 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer."

"Corporate officers who actively assist with their corporation's infringement may be personally liable for inducing infringement '*regardless* of whether the circumstances are such that a court should disregard the corporate entity and pierce the corporate veil.'" *SDS USA*, 2002 WL 31055997, at *6 (citing *Manville,* 917 F.2d at 553 (citing *Orthokinetics,* 806 F.2d at 1578–79)). "Inducement requires a showing that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." *Vita–Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009). Indeed, "inducement liability may arise 'if, but only if, [there is] . . . direct infringement.'" *Limelight Networks, Inc. v. Akamai Technologies, Inc.*, 134 S. Ct. 2111, 2117, 572 U.S. 915, 921 (2014) (citing *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 365 U.S. 336, 341, 81 S. Ct. 599, 5 L.Ed.2d 592 (1961)) (emphasis deleted). "While proof of intent is necessary, direct evidence is not required; rather circumstantial evidence may suffice." *SDS USA*, 2002 WL 31055997, at *7 (citing *Water Tech. Corp. v. Calco. Ltd.,* 850 F.2d 660, 668 (Fed.Cir.1988)).

Therefore, to state a claim for induced infringement, a plaintiff must plead facts raising a plausible inference that: "(1) Defendants knowingly induced a third party to perform specific acts; (2) Defendants specifically intended for the induced acts to infringe the [a]sserted [p]atents; and (3) as a result of the inducement, the third party directly infringed the [a]sserted [p]atents." *Straight*

*Path IP Grp., Inc. v. Vonage Holdings Corp.*, No. 14-502, 2014 WL 3345618, at *2 (D.N.J. July 7, 2014); *See Hoffman–La Roche Inc. v. Apotex Inc.*, No. 07–4417, 2010 WL 3522786, at *2 (D.N.J. Sept. 2, 2010).

"[I]nducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006). The Supreme Court has explained that the "knowledge" required for inducement includes both knowledge of the patent and knowledge of infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015). Therefore, to "sufficiently plead induced infringement, [the complaints] must contain facts plausibly showing that [the defendants] specifically intended their customers to infringe the . . . patent[s] and knew that the customer's acts constituted infringement." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d at 1339.

In Count VI, Plaintiffs allege Kress induced infringement through ten acts, though only two set forth facts that could be construed as actively inducing infringement. Plaintiffs allege "Kress took active steps to induce infringement off the claims of the '494 patent as he personally appeared in TV and online commercials promoting the accused infringing product. (ECF No. 34 ¶ 114.) Plaintiffs also claim "Kress induced Spencer Forrest to directly infringe the '494 patent by appearing on a YouTube video claiming to be the creator of Toppik and Advertising features such as ease of use and affordability which are the advantages of Mr. Batinkoff's patented invention." (*Id.* ¶ 115.) Plaintiffs further allege Spencer Forrest "shipped the accused infringing product to Harmon Stores" in Manalapan and Bricktown, New Jersey "at the direction of Kress." (*Id.* ¶¶ 21, 22.)

As to the element of knowledge, the Second Amended Complaint alleges "Kress spoke with Mr. Batinkoff about Mr. Batinkoff's invention in an attempt to learn more about it and the '494 patent . . . and shortly thereafter . . . applied for the '115 patent . . . and cited U.S. Patent Publication No. 2008/0223879-A1 of Batinkoff et al., which disclosed Batinkoff's invention and subsequently issued as the '494 patent." (*Id.* ¶¶ 125-27.) The Court concludes that for the purposes of this Motion, and with all reasonable inferences favoring Plaintiffs as required for a Motion to Dismiss, Plaintiffs have alleged circumstantial evidence to support a determination Kress "knew or should have known" sales of the Toppik™ applicator would infringe the pump cap covered by Batinkoff's '494 patent.[10] Accordingly, the Court is persuaded that the Second Amended Complaint states in Count VI a claim for which relief could be granted, and the Motion to Dismiss is **DENIED** as to this Count.

The Court now turns to Kress's Motion to Dismiss Count VII, which alleges Kress contributed to infringement pursuant to § 271(c), which provides:

> Whoever offers to sell or sells within the United States . . . a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c)

Plaintiffs allege Kress contributed to infringement pursuant to § 271(c) because Spencer

---

[10] Kress argues Plaintiffs' allegation that Kress knew about the '494 patent as a result of inquiries made before Kress applied for the '115 patent fails because Kress applied for the '115 patent on April 10, 2008, before the '494 patent was issued on November 30, 2010. (ECF No. 41 at 12 n.3.) Courts may consider any "document *integral to or explicitly relied upon* in the complaint." *Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220). However, Kress did not put the '115 patent before the Court, and he provides no other basis for this assertion.

Forrest "on behalf of Mr. Kress" marketed and sold the Toppik™ Applicator through a number of websites. (ECF No. 34 ¶ 123.) Though Count VII alleges contributory infringement by Kress, the Court concludes that because the claim concerns acts Kress allegedly undertook "on behalf" of Spencer Forrest the inquiry turns on the same finding that the Plaintiffs have not pleaded sufficient facts to conclude Kress was the alter ego of Spencer Forrest. Therefore, the Court concludes Count VII does not state a claim for which relief could be granted, and Kress's Motion to Dismiss Count VII of the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) is **GRANTED**.

The Court now examines Count VIII alleging Kress willfully infringed the '494 patent. In Count VIII, Plaintiffs claim Kress willfully infringed the '494 patent because, "[d]espite Mr. Kress' knowledge of the '494 patent, he willfully, wantonly, and deliberately engaged in the acts of infringement alleged herein, either by himself, or though the approval, direction, and control of others, including his company Spencer Forrest." (ECF No. 34 ¶ 128.)[11]

A finding of willful infringement is a threshold for a court award of enhanced damages pursuant to 35 U.S.C. § 284. *Välinge Innovation AB v. Halstead New England Corp.*, 2018 WL 2411218, at *3 (D. Del. 2018) (citing *In re Seagate Tech., LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007) (citing cases); *LG Display Co. v. AU Optronics Corp.*, 722 F. Supp. 2d 466, 470, 474 (D. Del. 2010); *see also SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1464 (Fed. Cir. 1997) (explaining "willful infringement . . . is the term designating behavior for which enhanced

---

[11] Plaintiffs claim Kress failed to oppose Count VIII in his Brief in Support of his Motion to Dismiss and thus was barred from addressing that claim in any Reply. (ECF No. 48 at 17-19.) Kress argues in his Reply that its opposition to Count VIII's claim in its original brief in support of the Motion was implicit in its argument that there was no infringement, because without a threshold finding of infringement, there can be no further finding that any infringement was willful. (ECF No. 52 at 8-9.) Because the Court makes its findings based solely on its examination of the sufficiently of the allegation, this dispute is moot.

damages may be assessed").)

To sustain allegations of willful infringement, "a plaintiff must allege facts plausibly showing that as of the time of the claim's filing, the accused infringer: (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent." *Välinge Innovation*, 2018 WL 2411218, at *13.

Here, Plaintiffs allege Kress knew of the patent because "Kress spoke with Mr. Batinkoff about Mr. Batinkoff's invention in an attempt to learn more about it and the '494 patent . . . and shortly thereafter . . . applied for the '115 patent . . . and cited U.S. Patent Publication No. 2008/0223879-A1 of Batinkoff et al., which disclosed Batinkoff's invention and subsequently issued as the '494 patent." (*Id.* ¶¶ 125-127.) The Court concludes Plaintiffs have sufficiently pleaded facts to support a conclusion Kress knew about the '494 patent then before Plaintiffs filed the original Complaint in this matter, as Kress's '115 patent was dated May 2012 and this suit was filed in 2018.

However, the Court concludes Plaintiffs have not sufficiently plead facts to support a determination Kress knew or should have known *how* it is that products based on the '115 patent infringed Plaintiffs' '494 patent. *Välinge Innovation*, 2018 WL 2411218, at *13. Plaintiffs attached to the Second Amended Complaint Exhibit I, purporting to be a February 2018 email exchange between Batinkoff and a Church & Dwight executive. (ECF No. 34-1 at 29-30.) In that exchange, Batinkoff informs Church & Dwight of his patent and seeks to discuss strategic opportunities. (*Id.*) In this email, Batinkoff does not inform Church & Dwight of his allegation that Church & Dwight's Toppik™ infringes the '494 patent. (*Id.*)

In their opposition to the Motion to Dismiss, Plaintiffs attach Exhibit A, a December 2018

letter from Church & Dwight to counsel for Plaintiffs. (ECF No. 49-1 at 2-3.) In that letter, Church & Dwight identifies five reasons why its Toppik™ hair applicator does not infringe the '494 patent. (*Id.*) However, Church & Dwight states that the letter is in response to having seen a copy of the Complaint, though the company says it had not yet been served with the Complaint. There is not, however, in the pleadings or in Plaintiffs' exhibits any evidence Plaintiffs provided notice to Kress or Spencer Forrest that the Toppik™ product infringed the '494 patent. Thus, it is clear Count VIII fails to state a claim for which relief could be granted because Plaintiffs have not sufficiently pleaded facts to support a determination Kress knew or should have known *how* it is that products based on the '115 patent infringed Plaintiffs' '494 patent. *Välinge Innovation*, 2018 WL 2411218, at \*13. Accordingly, Kress's Motion to Dismiss Count VIII is **GRANTED**.

### B. Plaintiffs' Motion to Dismiss Church & Dwight's Counterclaims

Plaintiffs argue Church & Dwight's counterclaims should be dismissed because Defendant fails to provide the level of factual support required to sustain their allegations.

Counterclaim I seeks a declaratory judgment that Church & Dwight has not infringed the '494 patent, while Counterclaim II seeks a declaratory judgment of invalidity or unenforceability by reason, among other things, of Plaintiffs' "unclean hands and/or patent misuse." (ECF No. 39 ¶¶ 6-15.).

Plaintiffs argue *Ballentine v. United States* requires that, while facts must be construed in favor of the nonmoving party, here Church & Dwight, "factual allegations must be made, even if on 'information and belief.'" (*Id.* (citing *Ballentine*, 486 F.3d 806, 810 (3d Cir. 2007). Plaintiffs contend Church & Dwight does not provide instances of "inequitable conduct during prosecution of the '494 patent" to support Counterclaim II's "unclean hands" allegation. (ECF No. 50 at 8-9 (citing *Monsanto v. Rohm & Haas Co.*, 456 F.2d 592, 601 (3d Cir. 1972); *Consol. Aluminum Corp.*

*v. Foseco Int'l Ltd.*, 910 F.2d 804, 810–812 (Fed. Cir. 1990)).) Similarly, Plaintiffs aver that the "mere presence of the allegations of non-infringement and invalidity of the '494 patent, without more, is insufficient to sustain an allegation of patent 'misuse'" as also claimed in Counterclaim II. (*Id.* at 9.) Finally, Plaintiffs argue Church & Dwight have failed to provide any facts to support Counterclaim I's claim of noninfringement beyond the bare denials "Church & Dwight has not infringed . . . any valid and enforceable claim of the '494 Patent" and "Church & Dwight has not willfully infringed any valid and enforceable claim of the '494 Patent." (*Id.* (citing ECF No. 39 ¶¶ 8, 9).)

Defendant counters that it has sufficiently pleaded allegations of noninfringement and invalidity pursuant to L. Pat. R. 3.1 and 3.3. (ECF No. 54 at 3-4.) Defendant further cites *Elan Pharma Intern. Ltd. v. Lupin Ltd.* for the proposition that disclosure beyond that included in the Counterclaims would make Rules 3.1 and 3.3 superfluous. (*Id.* (citing *Elan Pharma*, 2010 WL 1372316, at *5 (D.N.J. 2010). This Court agrees.

The Local Patent Rules require a party claiming patent infringement to serve a "Disclosure of Asserted Claims and Infringement Contentions" on all parties providing, "among other information, each claim of each patent in suit that is allegedly infringed by each opposing party, including for each claim the applicable statutory subsections of 35 U.S.C. § 271 asserted." *Elan Pharma*, 2010 WL 1372316, at *5 n. 4. This Disclosure is to occur within 14 days after an initial scheduling conference. (L. Pat. R. 3.1(a)). Rule 3.3(d) requires a party opposing a claim of patent infringement to serve within forty-five (45) days after service of the Rule 3.1 disclosure its "Invalidity Contentions" identifying, among other things, "any grounds of invalidity based on 35 U.S.C. § 101." (*Id.*) A review of the docket shows the initial pretrial conference was held on June 12, 2019. The docket does not reveal whether Plaintiffs have filed their initial required Disclosure

triggering the 45-day deadline for Church & Dwight to serve its invalidity contentions. Regardless, the Court concludes Church & Dwight's pleading satisfies the "crux of *Twombly* and *Iqbal* [which] is to ensure [Batinkoff and Top Secret as Counterclaim Defendants have] fair notice of what is being pled." *Elan Pharma*, 2010 WL 1372316, at *5. Accordingly, Plaintiffs Motion to Dismiss Counterclaims I and II is **DENIED**.

### IV. CONCLUSION

For the reasons set forth above, Kress's Motion to Dismiss is **GRANTED in part and DENIED in part** as set forth herein and in the accompanying Order, while Plaintiffs' Motion to Dismiss the Counterclaims is **DENIED**.


**Date: March 31, 2020**　　　　　　　　　　　　　*/s/ Brian R. Martinotti*　　　　　
　　　　　　　　　　　　　　　　　　　　　　　　　HON. BRIAN R. MARTINOTTI
　　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE