**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

RANDALL BATINKOFF and TOP SECRET,

Plaintiffs,

v.

CHURCH & DWIGHT CO., INC. AND MARK H. KRESS,

Defendants.

Case No. 3:18-cv-16388-BRM-LHG

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendant Church & Dwight Co. Inc.'s ("Church & Dwight" or "Defendant") Motion to Stay the litigation pending the outcome of an Inter Partes Review ("IPR") recently instituted by the United States Patent & Trademark Office's Patent Trial and Appeal Board ("USPTO" or "PTAB") involving U.S. Patent No. 7,841,494 (the "'494 Patent"), the only patent asserted in this lawsuit. (ECF No. 101.) Plaintiffs Randall Batinkoff ("Batinkoff") and Top Secret ("Top Secret") (collectively, "Plaintiffs") oppose the Motion. (ECF No. 104.) Having reviewed the filings submitted in connection with the motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, Church & Dwight's Motion to Stay is **GRANTED**.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Factual Background

At issue in this litigation is a patent that makes possible spray-on hair. Batinkoff is a

California actor who is the named inventor of the ’494 patent. (Second Am. Compl. (ECF No. 34) ¶¶ 1, 3, 7, Ex. A (ECF No. 34-1) at 30 (Batinkoff Feb. 13, 2018 email).) The ’494 patent, titled “Pump Dispenser,” is a one-hand pump cap for dispensing hair fibers without clogging. (*Id.* ¶¶ 7, 9, Ex. 1 at 30.) The remainder of the underlying facts are set forth at length in the Court’s March 31, 2020, Opinion (ECF No. 91). In the interest of judicial economy, the Court refers to that Opinion for a full recitation of the factual background of this dispute.

**B. Procedural History**

Batinkoff filed a Complaint on November 21, 2018, alleging one count of direct infringement against Church & Dwight and one count of direct infringement against then co-Defendant Mark Kress pursuant to the “Patent Laws of the United States, 35 US.C. § 101 *et. seq.* [sic]” (ECF No. 1 ¶¶ 4, 14-26, 37-59.) Batinkoff filed an Amended Complaint on February 4, 2019 (ECF No. 9), to which Church & Dwight filed an Answer on February 19, 2019. (ECF No. 18.) Batinkoff filed a Second Amended Complaint on May 10, 2019 (ECF No. 34), to which Church & Dwight filed an Answer on May 23, 2019, denying any infringement and including Counterclaims I and II. (*Id.* ¶¶ 6-15.) Kress moved to dismiss the Second Amended Complaint on May 24, 2019. (ECF No. 40.) On June 13, 2019, Plaintiffs moved to dismiss Church & Dwight’s Counterclaims. (ECF No. 49.) This Court granted Kress’s Motion as to Counts VII and VIII of the Second Amended Complaint, while denying the Motion on all other grounds, as well as denying Plaintiffs’ Motion to Dismiss Church & Dwight’s Counterclaims. (*See* ECF No. 91; *see also* Order (ECF No. 92).)

In the interim, Church & Dwight sought an IPR by the PTAB of claims 1–11 for the ’494 patent on November 20, 2020. (*See* Petition at Def.’s Ex. 2 (ECF No. 101-3).) On May 15, 2020, the PTAB determined Church & Dwight has demonstrated a “reasonable likelihood” it would

prevail on at least one claim. (*See* USPTO Dec. at Def.'s Ex. 1 (ECF No. 101-3).) As a result, the PTAB stated it was instituting an IPR of claims 1–11 of the '494 patent. (*Id.*)

Kress filed an Answer to the Second Amended Complaint on May 29, 2020. (ECF No. 95.) On June 1, 2020, the Parties submitted their claim-construction briefs for a Markman hearing. (ECF Nos. 96-98.) On June 15, 2020, Plaintiffs filed a Stipulation of Dismissal as to Kress that the Court executed the next day. (ECF Nos. 99, 100.) Church & Dwight filed this Motion on June 18, 2020. (ECF No. 101.) Plaintiffs oppose the Motion. (ECF No. 104.) Church & Dwight filed a Reply. (ECF No. 105.)

## II. LEGAL STANDARDS

It is well-settled that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936) (citing *Kansas City Southern Ry. Co. v. U.S.*, 282 U.S. 760, 763 (1931); *Enelow v. New York Life Ins. Co.*, 293 U.S. 379, 382 (1935)). With respect to patent cases, courts have "consistently recognized the inherent power of the district courts to grant a stay pending reexamination of a patent." *P&G v. Kraft Foods Global, Inc.*, 549 F.3d 842, 849 (Fed. Cir. 2008). However, "a stay should ordinarily not be granted unless there is a substantial patentability issue raised." *Amazon.com v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350-51 (Fed. Cir. 2001).

District courts often enter stays when the PTAB institutes an IPR to conserve resources, avoid redundant or conflicting opinions, and so District Courts can benefit from the PTAB's view on the validity of a patent or claim. *Cf. Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001). There are three factors to determine whether a stay is appropriate in a particular case: "(1) whether a stay would unduly prejudice or present a clear tactical

disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Canfield Sci., Inc. v. Drugge*, Civ. No. 16-4636, 2018 WL 2973404, at *2. (D.N.J. June 13, 2018) (citing *Depomed Inc. v. Purdue Pharma L.P.*, Civ. No. 13–0571, 2014 WL 3729349, at *2 (D.N.J. July 25, 2014); *Thermolife Int'l, LLC v. Prosource Performance Prod.*, Civ. No. 15–2037, 2015 WL 9480023, at *6 (D.N.J. Dec. 29, 2015) (quoting *Mondis Tech. Ltd. v. LG Elecs., Inc.*, Civ. No. 15–4431, 2015 WL 7012747, at *6 (D.N.J. Nov. 12, 2015)). "The party seeking the stay bears the burden of showing that it is warranted." *Nicolas v. Trustees of Princeton Univ.*, Civ. No. 17-3695, 2017 WL 6514662, at *2 (D.N.J. Dec. 20, 2017) (*citing Nussbaum v. Diversified Consultants, Inc.*, Civ. No. 15-600, 2015 WL 5707147, at *2 (D.N.J. 2015).

## III. DECISION

The Court finds these three *Canfield* factors weigh in favor of a stay. The Court addresses each factor in turn.

### A. Undue Prejudice or Tactical Disadvantage to the Non-Moving Party

Plaintiffs argue the Motion should be denied because a stay would result in undue prejudice toward them. Specifically, Plaintiffs make two points: that the Parties "directly compete in the hair-fiber-applicator market, and [Church & Dwight's] ongoing infringement injures Plaintiffs and interferes with the market that should have belonged exclusively to Plaintiffs"; and that Church & Dwight "delayed filing its IPR petition in order to extract the maximum benefit from proceedings in this litigation. Now that [Church & Dwight] obtained that benefit, it wants to stay this litigation before Batinkoff shatters [Church & Dwight's] erroneous IPR position." (ECF No. 104 at 1.) Specifically, Plaintiffs argue Church & Dwight's IPR Petition was filed more than a year after the Complaint was filed in November 2018. (ECF No. 104 at 3.)

Church & Dwight counters that its IPR Petition was "timely filed" in November 2019. (ECF No. 101-1 at 6.) To the extent there was any delay, Church & Dwight point to Plaintiffs' failure to serve intrinsic and extrinsic evidence supporting their proposed claim constructions until November 15, 2019, though such evidence was due November 8, 2019 pursuant to the Court's July 2019 Scheduling Order. (*Id.* at 7; *see also* Order (ECF No. 57).) Church & Dwight admits it waited until it received Plaintiffs' proposed claim constructions, believing any supporting evidence would inform their IPR Petition. (ECF No. 101-1 at 7.) However, Church & Dwight maintains it filed its IPR petition less than a week later and it informed the Court of this in its Markman briefing. (*Id.* (citing Markman Response Brief (ECF No. 97) at 28 n.23).) Church & Dwight also disputes both that the parties are direct competitors and that Plaintiffs would have the market to themselves in the absence of Church & Dwight, arguing there are several companies selling products "in competition with both Plaintiff's Top Secret product and [Church & Dwight's] accused products." (*Id.* (citing Decl. of Baldassare Vinti at Def.'s Ex. 2 (ECF No. 101-2) ¶ 6 (introducing an Amazon search result for "Top Secret Toppik Hair Fiber Applicator" showing competing products from multiple manufacturers)).)

In making its determination, "[c]ourt[s] should consider whether any disadvantages of the inherent delay [resulting from a stay] are outweighed by the advantages that come along with allowing the PTO to complete reexamination." *Smart Vent, Inc. v. USA Floodair Vents, Ltd.*, Civ. No. 10-0168, 2012 WL 12909887, at *2 (D.N.J. Apr. 25, 2012) (quoting *Brass Smith, LLC, v. RPI Indus., Inc.*, Civ. No. 09-6344, 2010 U.S. Dist. LEXIS 116063, at *7 (D.N.J. Nov. 1, 2010) (citing *ICI Uniqema, Inc. v. Kobo Products, Inc.*, Civ. No. 06-2943, 2009 U.S. Dist. LEXIS 108421 at *2 (D.N.J. Nov. 20, 2009).

The Court considers a number of subfactors for this prong, including "the timing of the request for reexamination, the timing of the request for [a] stay, the status of the reexamination proceedings and the relationship of the parties." *Canfield Sci., Inc. v. Drugge*, Civ. No. 16-4636, 2018 WL 2973404, at *2 (D.N.J. June 13, 2018) (citing *Depomed*, 2014 WL 3729349, at *2 (quoting *Boston Scientific Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 789 (D. Del. 2011)).

The Court determines a stay would neither unduly prejudice nor present a clear tactical disadvantage to Plaintiffs.

Plaintiffs urge this Court to conclude Church & Dwight delayed its IPR Petition only to take advantage of litigation exchanges, citing the gap of a year between the filing of the Complaint and the filing of the IPR Petition. However, the Court observes that Plaintiffs filed two amended complaints after the November 2018 institution of this action. The Court concludes it is more appropriate to look at the span of time between either the filing of the Answer to the Second Amended Complaint or the Court's first scheduling order and the filing of the IPR Review. Church & Dwight's Counterclaims asserting the invalidity of Batinkoff's patents were filed with Defendant's Answer on May 23, 2019. (ECF No. 39.) A Pretrial Scheduling Order in this matter was executed on July 9, 2019. (ECF No. 57.) Church & Dwight filed its IPR Petition on November 20, 2019. The PTAB issued its Decision on May 15, 2020, and Church & Dwight filed this Motion to Stay on June 18, 2020. The Court does not find the four months between this Court's Scheduling Order and the filing of the IPR Petition nor the four weeks between the PTAB's Decision and the filing of this Motion constitutes undue delay or demonstrates bad faith by Church & Dwight. The Court therefore considers this subfactor to be neutral.

The Court next turns to next subfactor, the status of the IPR proceedings.

Church & Dwight argues the PTAB "is required by statute to reach a final determination regarding the validity of all of the claims of the '494 Patent by May 15, 2021, absent an extension for good cause." (ECF No. 101-1 at 2.) Church & Dwight further contends "almost every reported New Jersey Direct [sic] Court opinion that has considered the issue has granted a stay where a reexamination request was pending." (*Id.* (quoting *Nasdaq, Inc. v. IEX Grp., Inc.,* Civ. No. 18-3014, 2019 WL 8268544, at *5 (D.N.J. Sept. 13, 2019) (citation and internal quotations omitted).)

Plaintiffs counter that a stay would prejudice them, as they believe the case "can be ready for trial prior to the May 21, 2021 deadline" for a PTAB ruling. (ECF No. 104 at 1-2.)

The Court observes that "the delay inherent to the reexamination process does not constitute, by itself, undue prejudice." *ICI Uniqema*, 2009 U.S. Dist. LEXIS 108421, at *4 (quoting *SKF Condition Monitoring, Inc. v. SAT Corp.*, Civ. No. 07-1116, 2008 U.S. Dist. LEXIS 88737, at *6 (S.D. Cal. Feb. 27, 2008)). The Court also does not share Plaintiffs' confidence regarding the potential for trial to begin before May 2021 amid a pandemic that already has introduced significant delays in the conduct of many of the Court's proceedings. As the delay sought here is less than a year, the Court determines it is not long enough to outweigh the other factors and subfactors.

The Court now turns to the final subfactor, the relationship of the parties.

The Court appreciates that the parties are competitors in this market.

Plaintiffs urge the Court to follow *Becon Med., Ltd. v. Bartlett*, where a Motion to Stay was denied in part because the parties were direct competitors and the court concluded there was strong evidence of willful infringement, as Plaintiffs allege in this litigation. (ECF No. 104 at 4 (citing *Becon Med.*, Civ. No. 18- 4169, 2019 WL 6910130 (E.D. Pa. Dec. 18, 2019)).)

Church & Dwight counters that courts have found allegations of undue prejudice are weakened where, "for some unexplained reason, [Plaintiff] waited nearly a year after the [asserted] patent issued before it filed suit against Defendants." (ECF No. 105 at 5 (quoting *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1319 (Fed. Cir. 2014). Church & Dwight maintains Batinkoff waited two years to file this litigation after Church & Dwight began selling its competing product, a product line it acquired in 2016 from Spencer Forrest. (*Id.*) Church & Dwight also contends there is no evidence Batinkoff ever sued Spencer Forrest. (*Id.*)

The Court concludes this relationship-of-the-parties subfactor is neutral. In *Wyeth v. Abbott Laboratories,* the court denied a request for a stay pending IPR where the parties were direct competitors. 2011 U.S. Dist. LEXIS 9824 (D.N.J. Jan. 31, 2011).) However, in that matter plaintiff alleged damages from the alleged infringement of roughly one billion dollars ($1 billion) in annual sales, the resulting layoffs of critical employees, and the reduction of its research-and-development program. *Id.* at *5. By contrast, Plaintiffs here have not alleged any specific economic harm beyond the generalized loss of a "market that should have belonged exclusively to Plaintiffs." Also, the Court is not persuaded one picture of the Toppik product next to its Church & Dwight rival on the shelves at one store in New Jersey sufficiently supports Plaintiffs' contention that in the absence of Church & Dwight it would have the market exclusively to itself. Plaintiffs' demonstrate this further in their admittance that the Amazon search results for Toppik introduced by Church & Dwight includes other, similar products, though Plaintiffs argue those rivals have "a much smaller market influence." (ECF No. 104 at 4.) Consequently, the Court determines this prong weighs in favor of granting the Motion.

**B. Simplify the Issues and Trial**

Church & Dwight maintains a PTAB review will simplify the issues in this litigation. That is because the PTAB will be reviewing all claims of the '484 Patent, including all asserted and unasserted claims. (ECF No. 101-1 at 9.) At best, Church & Dwight argues, the PTAB could eliminate the need for trial by ruling for Church & Dwight. (*Id.* at 8-9.) At worst, this Court would benefit from the review of all prior art by the USPTO. (*Id.* (citing *Depomed*, 2014 WL 3729349, at *5 (quoting *Eberle v. Harris*, Civ. No. 03-5809, 2005 WL 6192865, at *2 (D.N.J. Dec. 8, 2005)); *see also Bio-Rad Laboratories Inc. v. 10X Genomics, Inc.,* Civ. No. 18-1679, 2020 WL 2849989, at *1 (D. Del. June 6, 2020) ("There could even be a benefit gained from more intrinsic evidence relevant to claim construction.").) At the least, Church & Dwight argues, the PTAB likely will narrow the issues remaining in the litigation. (*Id.*)

Plaintiffs counter that Church & Dwight's theories are likely to fail, leaving all claims intact. (ECF No. 104 at 6.) Plaintiffs' brief presents arguments countering Church & Dwight's theories and prior-art evidence that they maintain will be presented during the IPR. (*Id.* 6-7.) Plaintiffs contend these arguments demonstrate the IPR will not simplify the issues. (*Id.*)

Re-examination proceedings may "eliminate, narrow, or clarify certain disputed issues in [a] litigation." *Smart Vent.*, 2012 WL 12909887, at *4 (citing *Wyeth*, 2011 U.S. Dist. LEXIS 9824 at *7). Moreover, "claims that may be rejected during the reexamination will not need to be litigated and [. . .] it is possible that any claims surviving reexamination may be amended." *Smart Vent*, 2012 WL 12909887, at *4 (citing *ICI Uniqema*, 2009 U.S. Dist. LEXIS 108421 at *5). Therefore, "the debate is not whether or not this civil action will be affected, but rather the extent of said effect." *Id.* (citing *ICI Uniqema*, 2009 U.S. Dist. LEXIS 108421 at *5).

Accordingly, the Court concludes the imposition of a stay has potential to prevent resources from being expended on invalid or amended claims. *Id.* (citing *ICI Uniqema*, 2009 U.S. Dist. LEXIS 108421 at *5); *see also Sabert Corp.*, 2007 U.S. Dist. LEXIS 68092, at *6 (noting that a stay, while adding to litigation, is a minimal expenditure of judicial economy for what might be an optimal efficiency gain, as the re-examination period may produce information that narrows the issue before the court).

A stay, therefore, could aid the Court in narrowing the issues and give the Court the benefit of the PTAB's perspective on validity. The IPR will include all claims of the '484 Patent, so the Court will gain the benefit of the PTAB's comprehensive insight even were this re-examination to fail to significantly reduce the number of issues in the litigation. Plaintiffs contend a Stay would put them at a litigation disadvantage. The Court observes that if Plaintiffs' arguments in front of the PTAB are matched by their confidence, it is as likely that Plaintiffs' position would be strengthened by PTAB. Therefore, the Court finds this second factor weighs in favor of granting the Motion.

**C. Stage of Litigation**

Church & Dwight argues discovery is in the early stages, though the case began in November 2018. (ECF No. 101-1 at 2.) Specifically, Church & Dwight contends "[n]o depositions have been taken and expert discovery has not begun. The claim construction hearing has not been scheduled, dispositive motions have not been filed, and the trial date has not been set." (*Id.* at 3.)

Plaintiffs maintain discovery is nearly complete, though they concede depositions haven't begun, and claim construction is "ripe for a decision by this Court on the papers or, optionally, after a hearing." (ECF No. 104 at 8.)

Church & Dwight replies that "the fault for any purported 'delays' in the resolution of Plaintiffs' litigation claims lies with Plaintiffs themselves, by waiting years to file suit and then requesting months-long extensions when they finally did." (Def.'s Reply (ECF No. 105) at 1.) The Court agrees this prong weighs in favor of granting the Motion.

It cannot, of course, be disputed that this litigation already spans twenty-one months. However, Plaintiffs used the first eight months to file two Amended Complaints, meaning it was not until this Court's Opinion of March 31, 2020, that the litigation advanced beyond the pleading stage. Plaintiffs also requested a lengthy delay in the briefing of claim constructions for a Markman hearing. (ECF Nos. 78, 85.) The Court does not ascribe any bad faith to any party for these delays. Rather, the Court notes these delays only to explain why it agrees with Church & Dwight that this litigation is in the comparatively early stages, and that this factor weighs in favor of granting the Motion.

## IV. CONCLUSION

For the reasons set forth above, Church & Dwight's Motion to Stay the Litigation is **GRANTED**. An accompanying Order will follow.

**Date: September 21, 2020**

***/s/ Brian R. Martinotti***
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**